In re Guardianship of Lawrence Delaney et al., Minors, Appellants; Loretta Delaney Frese, Guardian, Appellee.

No. 44920.

March 5, 1940.

Will J. Hayek, for objectors, appellants.

D. C. Nolan and G. A. Schlaegel, for guardian, appellee.

Miller, J.—This is a matter in probate, hearing being had on objections to the final report of the guardian. The report stated that no money or property had come into her hands as such guardian and, accordingly, she had made no distribution and would not be required to make any distribution. Objections

were filed by two of the wards, who had become of age, and by the minor wards through their mother as next friend, challenging the statement that no money or property had come into the hands of the guardian, and asserting that there was property for which the guardian should account. The court overruled the objections, approved the final report, discharged the guardian and exonerated her bond. The objectors appeal.

The controlling question is whether or not any money or property came into the hands of the guardian. In determining this question, it is necessary to decide the effect of a partition suit and the proceedings had therein, it being the claim of the guardian that such proceedings constitute an adjudication of the questions presented herein, and the objectors contending that the partition proceedings have no bearing on this controversy.

The four wards are grandchildren of one Daniel Delaney, who died testate September 17, 1933. His will was admitted to probate. It provided for the payment, as soon as possible after his death, of any and all just debts and expenses owing by the testator. It also provided for certain specific legacies and disposed of certain real estate. The real estate included the home place, a farm of 160 acres, which was devised to the four wards, "to be theirs absolutely upon condition that they pay the sum of Eight Thousand ($8000.00) Dollars into my estate within one year from the date of my death, and if not paid within said time, the said sum shall bear interest at the rate of five per cent per annum, payable annually from the date of my death, and shall be and remain a first lien upon said land until fully paid; and in the event that my said four above named grandchildren shall not have attained their majority at the time of my death, it is my will that my daughter, Loretta Delaney, be appointed guardian of their said property for the purpose of carrying out the provisions of this my will."

The $8,000 to be paid by the wards, pursuant to the above provision of the will, was bequeathed to the testator's four daughters, Mary Smith, Nellie Downs, Lillian Okenfeld and Loretta Delaney, the latter of whom is the guardian herein. She was also designated with Mary Smith executrix of the estate and qualified as such.

The guardian filed a final report on May 1, 1936, which recited that no money or property had come into her hands, as

guardian; the only property of the wards was an interest in said 160 acres of land subject to the payment of $8,000; the income from said real estate had been handled by the executrices of the estate of said Daniel Delaney, and had been fully accounted for in that estate; a copy of such accounting was attached to the report; one of the wards, Lawrence Delaney, had become of age; it was necessary to secure a loan of $8,000 before the wards could acquire title to the 160 acres, and the borrower would be required to personally sign the note to secure the loan; the guardian suggested that said Lawrence Delaney be appointed guardian to complete such loan and that she be discharged. On the same day the report was approved and the guardian discharged. Lawrence Delaney was appointed, but failed to qualify.

On September 17, 1938, Edwin and Rose Marie Delaney, by their mother as next friend, filed an application to set aside the order approving the final report. On October 12th Lawrence Delaney and Rita Delaney, who had become of age, filed a similar application; the guardian filed a special appearance; it was overruled and she was ordered to file a report. On the same day, October 12, 1938, she filed a supplemental final report, which recited that no money or property came into her hands as guardian; the will of Daniel Delaney provided for payment of debts and expenses; the personal property was insufficient to pay debts and expenses of administration; it was necessary to use the income from the real estate for that purpose; the income had been so used and had been fully accounted for by the executrices of the estate; a copy of such accounting was attached as Exhibit A; the guardian endeavored to secure financing of the $8,000 obligation necessary to secure the real estate for her wards; secured the appointment of Lawrence Delaney, as guardian; he refused to qualify or to attempt to secure the $8,000 loan; other efforts were made and were unsuccessful; when it became evident that the $8,000 could not be raised, an agreement was made by the guardian, her three sisters, the father of the minors, Ed Baldwin, attorney for the minors, and Lawrence Delaney, that the real estate be sold by a partition suit and any sum received in excess of $8,000 be turned over to the wards; the partition suit was instituted and prosecuted to a conclusion, resulting in the sale of the real estate

for $7,200; the proceeds were administered by the executrices of the estate; no money was received by the guardian; the condition imposed by the will was not met and the devise lapsed. The prayer of the report was that it be approved, the guardian discharged and her bond exonerated.

On November 16, 1938, objections to the final report were filed by Lawrence and Rita Delaney, now of age, and by the remaining minors, Edwin and Rose Marie Delaney, through their mother as next friend, denying that no money or property came into the hands of the guardian, asserting that the objectors are still the owners of the 160-acre farm and are entitled to the rents and proceeds after the death of the decedent, denying that the rents and proceeds were needed to pay debts and charges of the estate, asserting that there was sufficient personal property in the estate to pay the same, denying the accounting by the executrices of the estate, denying the agreement for partition, denying that the property was legally sold or that the devise lapsed, and praying for denial of approval of the final report and for an accounting as to the income from the real estate.

At the trial, various witnesses testified concerning the handling of the estate of Daniel Delaney, the agreement for partition of the real estate, and the proceedings had thereunder, which resulted in the ultimate sale of the property to Loretta Delaney Frese, guardian herein, and one of her sisters. There were also introduced in evidence the entire proceedings of the partition suit and the files in connection with the administration of the estate of Daniel Delaney, deceased.

The partition suit was commenced in January 1936. The plaintiffs were the four sisters to whom the $8,000 was to be paid under the will of Daniel Delaney. The defendants were the other heirs and legatees under the will, including the four wards of this guardianship, the guardian, in her official capacity, and the two executrices of the estate of Daniel Delaney, deceased. Most of the defendants entered written appearances. The wards herein were served with proper notice and a guardian ad litem was appointed for the minors. He filed answer in the form of a general denial.

The petition for partition asserted that the real estate to be partitioned, consisting of 200 acres, belonged to Daniel De-

laney, asserted the interests of the various parties under the terms of his will, incorporated the records and files of the estate by reference, asserted that the parties were unable to agree upon a division or settlement and distribution of the various bequests, legacies and devises under such will, that there were not sufficient funds on hand nor in prospect to pay the legacies, bequests, claims and obligations of the estate; that it was necessary to have the last will and testament legally construed to determine the interests of the parties to the property; asserted that the four wards herein were unable to pay the $8,000 required of them by the will, and prayed for judgment determining and establishing the rights and interests of the parties to the real estate owned by said Daniel Delaney, that the real estate be sold and a division of the proceeds be made to the persons entitled thereto.

On June 3, 1936, the partition suit came on for trial and a decree was entered determining that the said Daniel Delaney died seized of 200 acres of real estate and fixing the interests of the parties therein. The four wards of the guardianship herein were found to have been devised 160 acres of said real estate, subject to and upon condition that they pay to the estate the sum of $8,000 within one year from the death of the decedent, which they had not done, and that said real estate was also subject to its proportionate share of the expenses of administration and the payment of claims and obligations of the estate. All the real estate was ordered sold, the proceeds to be divided and distributed according to the interests and shares of the parties as fixed by the decree. Edwin Baldwin was appointed referee to sell the property, and three appraisers were appointed. No exceptions were taken to this decree, nor was there any appeal therefrom.

Baldwin qualified as referee. The property was appraised and an effort was made to sell it. On February 11, 1937, Baldwin reported that the property had been appraised for $8,600, that he had an offer from Arthur Frese and Loretta Frese, his wife (guardian herein), for a sale of the 200 acres for $10,000, and asked for approval of the sale. On the same day, the sale was approved, but the purchasers were unable to secure the necessary financing and it was not completed.

On March 28, 1938, Baldwin reported that the sale to Arthur

Frese and Loretta Frese had not been completed because of the difficulties encountered in financing the same, that the contract had been canceled and surrendered, and on March 10, 1938, he had sold the 200 acres to Loretta Frese and Nellie Downs for $8,600, the appraised value. The purchase price for the 160 acres involved herein appears to have been $7,200. He asked for approval of this sale. On the same day an order was entered approving the sale, authorizing and empowering the referee to execute and deliver the necessary deed, fixing an attorney fee, referee fees, etc., and providing for the completion of the sale.

On April 7, 1938, Baldwin, as referee, reported that the sale had been completed and the balance remaining in his hands, after the payment of necessary fees and costs, had been delivered to Loretta Frese and Mary Smith, executrices of the estate of Daniel Delaney, deceased. An order was entered approving the supplemental report, discharging the referee and exonerating his bond. No objections were made to this referee's sale, and no appeal was taken from any part of the partition proceedings. The time for appeal had expired prior to the filing of objections to the guardian's report which resulted in this litigation.

[1] The guardian and the four wards herein were all parties to the partition proceedings and were within the jurisdiction of the court. The court had jurisdiction of the subject matter of such proceedings. In the case of Bauer v. Bauer, 221 Iowa 782, 787, 266 N. W. 531, 534, we state:

"In the partition case wherein all the parties are before the court, the court of equity has jurisdiction to adjudicate all matters and the rights of the respective parties. Kramer v. Hofmann, 218 Iowa 1269, 257 N. W. 361; Creger v. Fenimore, 216 Iowa 273, 249 N. W. 147."

The case of Creger v. Fenimore, 216 Iowa 273, 276, 249 N. W. 147, 148, also involved a partition suit. A cross-petition was filed which sought an adjudication of certain rights under the will of a deceased owner of the real estate. In sustaining the court's jurisdiction of the controversy, we state:

"Appellants next insist that the cross-petitioners cannot sue jointly and each must sue separately; and, further, that the defendants in the cross-petition are not liable jointly, and

the duty of each cross-petitioner is to proceed against each co-obligor separately.

"While this may be true in a general way, yet this is an action in equity, and all parties interested are in court and the matters involved grow out of the same subject-matter. Under these circumstances, we think equity has jurisdiction to determine all of these matters, and the rights of the respective parties, and the general rule as to separate actions does not apply. This is a very convenient way of avoiding multiplicity of suits, however, under which circumstances equity always has jurisdiction. * * *

"In a large share of partition cases, the condition which exists in the present case arises, and equity has always adjusted the rights of the various parties to the partition case and settled matters of difference between them. We think this is the proper practice, thus avoiding a multiplicity of suits."

In the case of Ruggles v. Powers, 201 Iowa 284, 286, 207 N. W. 116, 117, a demurrer was filed to a petition for partition of real estate, the grounds being that the interests were to be determined by the will of one deceased, under which will the executor was authorized to sell the real estate. The demurrer was sustained. On appeal, the judgment was reversed. Our opinion therein concludes as follows:

"We perceive no reason why the devisee of an interest in real property held in common with other devisees should be denied a remedy by partition simply because authority was conferred upon the executor to sell the property and distribute the proceeds by the will. The title at the time this action was commenced was absolute in appellant and the appellee Anna Powers, and neither was required to wait for the executor to make sale and distribution. The demurrer should have been overruled."

The partition proceedings constitute an adjudication as to every matter there in issue and all questions necessarily involved therein. In the case of Cooper v. Brown, 143 Iowa 482, 495, 122 N. W. 144, 149, 136 Am. St. Rep. 768, we state:

"A final adjudication is conclusive not only upon every matter in issue, but also upon all other matters or questions necessarily involved therein. The partition proceedings brought

the common property within the jurisdiction of the court, and a decree ordering its sale puts it beyond the power of either party to thereafter complicate the situation by rebuilding a destroyed improvement thereon, and imposing the cost thereof upon his co-tenants.''

In Oswalt v. Cronk, 195 Iowa 230, 235, 190 N. W. 162, 164, 191 N. W. 978, we state:

''I. The first question for our consideration is whether or not the appellant's plea of a former adjudication should have been sustained as to any of the counts of this petition.

''In Fulliam v. Drake, 105 Iowa 615, we said: 'The general rule, subject to some exceptions, is that a judgment is conclusive, not only as to all matters actually in issue, but as to those which might or should have been alleged in the pleadings.'

''See, also, Donahue v. McCosh, 81 Iowa 296 [46 N. W. 1008]; Hanson & Myer v. Manley, 72 Iowa 48, 33 N. W. 357; Foster v. Hinson, 76 Iowa 714, 39 N. W. 682; Keokuk Gaslight & Coke Co. v. City of Keokuk, 80 Iowa 137 [45 N. W. 555].''

In the case of Bauer v. Bauer, supra, we state at page 791 of 221 Iowa, at page 536 of 266 N. W., as follows:

''In this case the interest of the appellants in any portion of the 1,079 acres of land was adjudicated in the partition proceeding, and the indebtedness to the estate was further adjudicated in the partition proceeding to the extent that this indebtedness far exceeded the share coming to the appellant from the estate, and that the whole of the land thus came to the widow and to the other heirs of the deceased.''

The objections to the final report of the guardian asserted that the guardian should account to the wards because the wards still own the 160-acre farm and are entitled to the rents and profits after the death of the testator, the devise to the wards did not lapse, the personal property of the estate was sufficient to pay all legacies, debts and charges of the estate and the real estate is not liable therefor. However, in the partition proceedings it is adjudicated otherwise and the adjudication is binding upon the wards because they were parties thereto.

The objections also asserted that the property was not legally sold in the partition proceedings. In appellants' argu-

ment herein, it appears to be their contention that the guardian was guilty of a breach of good faith in purchasing a one-half interest in the property at the partition sale. Unfortunately, this guardian has had conflicting interests herein. She was the guardian of these wards. She is co-executrix of the estate of the testator. She is a legatee as to $2,000 of the $8,000 that the wards were obligated to pay to secure the 160 acres. She was a purchaser at the partition sale. Her interests are obviously conflicting. But the sale was regular on its face. The attack now made is in a different proceedings. It is a collateral attack. It cannot be made.

In the case of Kile v. Hogan, 180 Iowa 1263, 1266, 164 N. W. 226, 227, we state:

"The court, in its order authorizing the sale, found that the price offered for said real estate was fair, just and reasonable, and the best obtainable, and authorized the sale thereof without the formality of appraisement. The land was, therefore, sold by the guardian without appraisement. The court having jurisdiction to authorize the sale of said real property, the omission of the appraisement was an irregularity only, and in no way affected the jurisdiction of the court to order the sale of the real estate. Bunce v. Bunce, 59 Iowa 533 [13 N. W. 705]; Hamiel v. Donnelly, 75 Iowa 93 [39 N. W. 210]; Dohms v. Mann, 76 Iowa 723 [39 N. W. 823]; Bacon v. Chase, 83 Iowa 521 [50 N. W. 23]. * * *

"The wife of Lawrence Kile conveyed her interest in the real estate by quitclaim deed to the purchaser thereof from the guardian, who was appointed upon her application, and she is made a party defendant in this suit. The sale cannot be collaterally attacked. Dohms v. Mann, supra; Bacon v. Chase, supra; Hamiel v. Donnelly, supra; Rice v. Bolton, 126 Iowa 654 [100 N. W. 634, 102 N. W. 509]; Bunce v. Bunce, supra."

In the case of Bauer v. Bauer, supra, which involved a partition sale, we state at page 790 of 221 Iowa, at page 535 of 266 N. W., as follows:

"It has been held that even if a notice is defective in some particulars, but not wholly defective, the judgment is not subject to collateral attack, and the application must be made in the lower court for correction of the alleged error. If this is

denied, an appeal should be taken. Belknap v. Belknap, 154 Iowa 213, 134 N. W. 734; Allen v. First Nat'l Bank, 191 Iowa 492, 180 N. W. 675; Pratt v. Western Stage Co., 27 Iowa 363; Fitzgerald v. Kelso, 71 Iowa 731, 29 N. W. 943; Moore v. Jeffers, 53 Iowa 202, 4 N. W. 1084; Cox v. Davis, 17 Ala. 714, 52 Am. Dec. 199. The latter case was written by a great uncle of the writer hereof, and points out, if the court has jurisdiction, the only method of raising the question is by appeal, and not by collateral attack.''

We have carefully examined the record herein, and have considered all of appellants' contentions in regard thereto. We find nothing which warrants a reversal. The court was right in determining that no money or property came into the hands of the guardian.

The motion to dismiss, submitted with the case, is overruled.

The judgment is affirmed.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.